# United States District Court

_____MIDDLE_____ DISTRICT OF _____ALABAMA_____

| | |
|---|---|
| In the matter of the Search of<br>(Name, address or brief description of person, property or premises to be searched)<br><br>**12918 US Hwy 80 West, Pike Road, Montgomery County, AL, as shown in Exhibit 1, which is incorporated by reference herein** | APPLICATION AND AFFIDAVIT<br>FOR SEARCH WARRANT<br><br>CASE NUMBER: 2:06mj136-DRB |

I, __Joseph Herman_____ being duly sworn depose and say:

I am a(n) __HIDTA Taskforce Agent_____ and have reason to believe

that ☐ on the person of or ☒ on the property or premises known as (name, description and/or location)

**12918 US Hwy 80 West, Pike Road, Montgomery County, AL,
as shown in Exhibit 1, which is incorporated by reference herein**

in the _____Middle_____ District of _____Alabama_____

there is now concealed a certain person or property, namely (describe the person or property to be seized)

**See Attachment A which is incorporated herein by reference,**

which are **contraband, evidence of a crime, fruits of a crime, or things otherwise criminally possessed**,

concerning violations of Title 21 United States Code, Sections 841(a)(1) and 846.

The facts to support the issuance of a Search Warrant are as follows:

**SEE ATTACHED AFFIDAVIT WHICH IS INCORPORATED BY REFERENCE HEREIN**

Continued on the attached sheet and made a part hereof:   ☒ Yes   ☐ No

_____
Signature of Affiant

Sworn to before me and subscribed in my presence,

| November 21, 2006 | at | Montgomery, Alabama |
|---|---|---|
| Date | | City and State |

| Delores R. Boyd, U.S. Magistrate Judge | _____ |
|---|---|
| Name and Title of Judicial Officer | Signature of Judicial Officer |

## ATTACHMENT A

## PROPERTY TO BE SEIZED

(1) Books, records, ledgers, and/or writings which record the receipt and/or distribution of controlled substances including marijuana as well as any other memoranda relating to the transportation, ordering, purchase, delivery and/or distribution of controlled substances, which writings and records are contraband as well as evidence;

(2) Papers, tickets, notes, schedules, receipts, and other writings and objects including but not limited to gasoline receipts, air travel vouchers, and motel/hotel embossed articles, which do or tend to establish domestic and/or interstate travel in interstate commerce;

(3) Addresses and/or telephone books and papers and other writings reflecting names, addresses, and/or telephone numbers as well as bills and paid receipts reflecting telephone toll records, any and all of which reflect the names, addresses, and telephone numbers of aliases or code names of both known and unknown co-conspirators in the above-described criminal activity, as well as other indicia of telephone usage and service including pay telephone usage which indicia includes, but is not limited to, telephone credit cards, large amounts of nickel, dime and/or quarter currency, and telephone paging devices which are carried on or about the persons to receive incoming notice or messages and which are activated by telephone usage;

(4) Currency of the United States including paper and coin currency, also precious metals, jewelry, financial instruments, including but not limited to, negotiable commercial paper, and currency obtained, connected with and/or possessed to facilitate the financing of illicit drug trafficking;

(5)     Photographs and videotapes, in particular, photographs or videotapes of co-conspirators, of assets, and/or of controlled substances, in particular, methamphetamine;

(6)     Safes, strong boxes, and/or other secure receptacles for the maintenance of valuable items and/or important documents including books, records, and other writings as well as United States currency as described above, and any keys or other evidence of the existence and usage of any lockers, safety deposit boxes or other secure receptacles situated elsewhere than at defendant property;

(7)     Articles of false identification;

(8)     Radio electronic equipment including but not limited to transceivers, receivers, scanners, antennae, RF detectors, walkie talkies, wireless transmitters as well as other electronics which are used ancillary to such equipment, including but not limited to, electrical calibration equipment, meters and test equipment;

(9)     Computers or other electronic devices which are capable of storing information, including, but not limited to computers, lap tops, floppy disks, cd roms, zip disks, hard drives, and personal data assistants (PDA).

(10)    Firearms;

(11)    Controlled substances

(12)    Paraphernalia for packaging, cutting, weighing, and distributing marijuana including but not limited to, scales, bags, pipes, and duct tape;

# AFFIDAVIT

Affiant, Joseph B. Herman, being duly sworn, deposes and says the following:

1. Your affiant, the undersigned Joseph B. Herman, is an Alabama State Trooper Corporal, assigned as an Agent for the Alabama Bureau of Investigation, and detailed to the High Intensity Drug Trafficking Area (HIDTA) Task Force located in Montgomery, Alabama. He has twenty two years of law enforcement experience in which the past eleven have been extensively directed in narcotics investigations. Your affiant has conducted investigations involving drug distribution, conspiracies, and drug trafficking. He has also received specialized training in narcotics investigations and has attended schools and seminars pertaining to narcotics investigations and drug enforcement.

2. Based on information recently received and the investigation that has developed, certain facts have emerged that make it necessary for a search warrant to be sought, thus prompting this affidavit. The testimony contained in this affidavit is based on your affiant's personal knowledge, knowledge of other law enforcement officers, and confidential sources. Based on the facts and information contained in this affidavit, your affiant has probable cause to believe that illegal drug proceeds, documents, and other items as set forth in attachment one of this affidavit are being kept, stored, and concealed at 12918 US Highway 80 West, Montgomery County, Alabama, the residence of Tracy Coleman. The residence is described as a one story white wood frame home.

3. On 11/21/2006, at approximately 12:50am, Alabama State Trooper Mike Harris was working the area of Interstate 85 in the Mount Meigs and Waugh areas of Montgomery County, Alabama. While working that area of the interstate, Trooper Harris stopped Tracy Leanard Coleman for a traffic violation near the 14 mile marker, south bound on

Interstate 85 in Montgomery County. Coleman was driving a 1992 maroon Buick Road Master Sedan bearing a paper tag displaying "Cash Cars."

4. During the traffic stop, Coleman told Trooper Harris that there was marijuana inside the vehicle he was operating. Coleman also said he was taking the marijuana to Montgomery to sell. Coleman further stated that he was on probation for Possession of Marijuana First Degree. Trooper Harris subsequently searched Coleman's vehicle and found approximately 10 individually wrapped bundles of Marijuana inside a blue knap sack in the back seat of the vehicle.

5. Based on the foregoing, your affiant spoke with Special Agent (S/A) Neill Thompson on the morning of 11/21/2006. S/A Thompson said that over the past year he has consistently received information from confidential and reliable sources of information regarding Tracy Coleman and his drug trafficking activities. That information according to Thompson indicated that Coleman is a large scale marijuana trafficker and also that Coleman deals in multi-kilo amounts of cocaine. Thompson added that his reliable sources have provided information in the past that has led to drug arrests and the seizure of property.

6. S/A Thompson said that based on his information, he has conducted surveillance at 12918 U. S. Highway 80 east and observed Tracy Coleman at this address on many occasions in the past year. This address is stated to have older vehicles around the yard and several "Pit Bull dogs."

7. On 11/21/06 a check with Alabama Power Company indicated the power at 12918 U. S. Highway 80 East Pike Road, Alabama subscribed in the name of Tracy Coleman.

Additionally, this is the only listing for power which is in Coleman's name or social security number appears.

8. On 11/21/2006 a check with the Alabama Pardons and Parole in Montgomery, Alabama showed that Tracy Coleman is presently on probation for Possession of Marijuana First Degree and his listed address with his probation officer as 425 Maury Street in Montgomery, Alabama.

9. On 11/21/2006 your affiant found a vehicle title document inside the Buick Road Master that Coleman was driving upon his arrest. That document indicated the vehicle tag was transferred to Tracy Coleman on 11/17/2006 and listed Coleman's address as 425 Maury Street Montgomery, Alabama.

10. On 11/21/2006, Special Agent Neill Thompson looked at the contents of the mailbox at 12918 U.S. Highway 80 East, Montgomery County, Alabama. The mail in the mailbox at this address were addressed to Tracy Coleman and bore this same address. Today, an Alabama State Trooper stopped a car leaving this address. The occupant of the car Jacqueline Coleman is the mother of Tracy Coleman. Ms. Coleman said she was there to feed her son's dogs. Ms. Coleman said her son Tracy Coleman lives at this address.

11. In an interview with Trooper Michael Harris, Harris told your affiant that he observed Coleman entering Interstate 85 from the Waugh entrance ramp and not traveling from the Shorter Exit as Coleman told your affiant. Furthermore, Coleman, upon his booking in the Montgomery County Jail, gave Trooper Harris the address of 425 Maury Street in Montgomery, Alabama to as Coleman's home address.

12. Based on the information thus far in this affidavit, it is the opinion of your affiant that Tracy Coleman is attempting to conceal this residence, 12918 U. S. Highway 80 East Pike Road, Alabama, from Law Enforcement Authorities. Additionally, your affiant knows that it is common for drug dealers and traffickers maintain a safe house commonly known as a "trap," which is usually located away from the trafficker's other residences. In these "traps," drug traffickers hide assets, records of drug transactions and controlled substances. Because of the information learned by your affiant, your affiant believes that the residence located at 12918 U. S. Highway 80 East Pike Road, Alabama is being used by Tracy Coleman to do just that, conceal narcotics, protect drug proceeds and records related to his drug trafficking activities.

13. Your affiant's training; experience and participation in investigations of narcotics traffickers have given me knowledge to recognize the methods used by narcotics traffickers to conceal their drugs, assets, income, and activities from the government and other third parties. Based on your affiant's training and experience, he knows the following:

   a). That drug traffickers generate tremendous profits from these illegal activities. These individuals attempt to hide their illegal activities to avoid detection by law enforcement agencies.

   b). That drug traffickers often place assets, purchased by them, in names other than their own to avoid detection of these assets by law enforcement agencies.

   c). That even though these assets may be in other persons' names, the drug traffickers continue to use these assets and exercise control over those assets.

d). That drug traffickers must maintain large amounts of currency readily accessible to them in order to maintain and finance their on going illegal activities.

e). That drug traffickers maintain books, records, receipts, bank statements and records, money orders, cashier's checks, documents relating to safety deposit boxes, and other documents and audio tape recordings evidencing the acquisition, secreting, transfer, and concealment of assets and currency. These records are maintained at a place such as a residence, business, and safety deposit boxes, where the individual has ready access to these documents and they are concealed from law enforcement authorities.

f). That drug traffickers often use these computers as a means of maintaining, organizing, updating and collating information and logs as to the progress of manufacture, weight and status of materials in various stages of manufacture as well as amounts, prices and costs of materials, manufacture and material sold to other persons. Traffickers often use computers to maintain lists of persons to whom controlled substances have been sold, the cost or price paid, as well as the dates of sales, locations and future orders made and/or anticipated. These persons also use computers and computer related material, i.e. diskettes, hard drives, CD ROM drives, and other means of electronically and magnetically storing data to save and store this information. Furthermore, such individuals also use computer modems, a device attached to a telephone line, to contact other persons similarly engaged in the manufacture, sale and distribution of controlled substances with reference to orders, costs, process and other related experiences.

g). That drug traffickers commonly "front" (provide illegal controlled substances on consignment) to their clients. That books, records, receipts, handwritten notes,

ledgers, and audio tape recordings are maintained for documenting fronted controlled substances to these individuals. These records are maintained at a residence, business, or safety deposit box where the individual has ready access to these documents and they are concealed from law enforcement authorities.

h). That when drug traffickers accumulate profits from the sale of these drugs, they frequently try to legitimize those profits. In order to accomplish this, they utilize foreign and domestic banks, securities, cashier's checks, money orders, and brokerage houses, real estate and business fronts.

i). That drug traffickers commonly maintain addresses and telephone numbers and books or papers which reflect names, addresses, and/or telephone numbers of their associates and clients in their drug trafficking activities and that they maintain these records at their residences, businesses, or in safety deposit boxes where they are concealed from law enforcement personnel.

j). That drug traffickers maintain safety deposit boxes as a place to store large amounts of currency generated through the sale of illegal drugs. Safety deposit boxes are used because the individual has ready access to the contents of these boxes and the contents are concealed from law enforcement authorities including the Internal Revenue Service.

k). That many drug traffickers purchase and maintain cashes of precious metals, jewelry, and other items of value relating to obtaining, transferring, secreting, or spending large sums of money made from engaging in drug trafficking activities at their residences, business, automobiles, storage buildings and safety deposit boxes.

l). That drug traffickers frequently take, or cause to be taken, photographs or video tapes of themselves, their associates, their properties, and their product, and that these traffickers maintain these photographs or video tapes at their residences, business, and safety deposit boxes.

m). That drug traffickers attempt to conceal their methods of communications and contacts with associates (use of telephones, digital or voice pagers and other communication devices).

n). That drug traffickers often use electronic equipment for communication and detection of transmitters and recorders.

o). That drug traffickers maintain firearms which are readily accessible for use as protection of the traffickers, his/her cash or other valuables, and drugs, and for use during, and relating to, drug trafficking. Additionally the United States Courts have consistently recognized firearms as "tools of the trade" of drug traffickers.

p). That drug traffickers frequently utilize the services of the Unites States Postal Service as well as private overnight or express delivery firms to expeditiously and covertly distribute and transport controlled substances from one location to another.

14. Based on the foregoing facts and information, your affiant has probable cause to believe that illegal drug proceeds, and items set forth in attachment #1 of this affidavit are being kept, stored, and concealed at 12918 U. S. Highway 80 East Pike Road, Montgomery County, Alabama. Moreover, based on your affiant's knowledge and experience, he knows that narcotics, narcotic related paraphernalia and drug proceeds are mobile and can be moved from place to place quickly for concealment. Therefore, this

information supports the search of vehicles and out buildings and other places within the cartilage of said property where narcotic substances can be hidden.

_____

Joe Herman, Agent

Alabama Bureau of Investigation

Sworn to and subscribed before me, this 21st day of November 2006

_____
Delores R. Boyd
United States Magistrate Judge

